UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-CV-14109-RAR

SEAN PERRI,

       Petitioner,

v.

RICKY D. DIXON,

       Respondent.

_____/

### ORDER DISMISSING IN PART AND DENYING IN PART
### 28 U.S.C. § 2254 HABEAS PETITION

**THIS CAUSE** is before the Court on a *pro se* Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254, challenging Petitioner's convictions and sentences imposed by the Tenth Judicial Circuit Court in and for Highlands County, Florida, in Case No. CF10-689. *See* Petition [ECF No. 1] ("Pet."). Respondent filed a Response to the Petition. *See* Response to Order to Show Cause [ECF No. 8] ("Resp."). Having carefully reviewed the record and governing law, and for the reasons set forth below, the Court **DENIES** Grounds Four and Five of the Petition and **DISMISSES** the remaining grounds as procedurally defaulted.

### PROCEDURAL HISTORY

Petitioner was charged by Second Amended Information with ten counts: one count of driving with a suspended or revoked license (Count 1), aggravated assault on a law enforcement officer with a deadly weapon (Count 2), leaving the scene of a crash involving damage (Count 3), fleeing or attempting to elude a law enforcement officer at a high speed (Count 4), resisting officers without violence (Count 5), possession of cannabis with intent to sell (Count 6), possession of cocaine (Count 7), possession of drug paraphernalia (Count 8), possession of ammunition by a

convicted felon (Count 9), and possession of a firearm by a convicted felon (Count 10).  *See* Second Amended Information [ECF No. 9-1] at 32–34.[1]

The State alleged that, on July 27, 2010, Petitioner attempted to avoid a traffic stop by "tr[ying] to run over a Sebring police officer, [and] dr[iving] away after a collision involving a deputy sheriff's patrol vehicle," Petitioner then "tossed out a bag containing a .45 calibre handgun, ammunition, cannabis, cocaine and paraphernalia before being apprehended."  Motion to Sever [ECF No. 9-1] at 48.  Prior to trial, Petitioner's defense counsel moved to sever Count 9 and 10 since "[t]he allegation that Defendant is a convicted felon, is wholly unrelated to the offenses charged in Counts [1-8] of the information."  *Id.*  The trial court granted the motion to sever, and a trial was held on Counts 1–8.  *See* Order Granting Motion to Sever [ECF No. 9-1] at 54.

On April 13, 2012, a jury found Petitioner not guilty of Count 2 but guilty as charged on all seven other counts.  *See* Verdict [ECF No. 9-1] at 65–68.  Several days after the verdict, Petitioner entered a *nolo contendere* plea as to Counts 9 and 10.  *See* Change of Plea Hr'g Tr. [ECF No. 10-9] at 3–11.  After adjudicating Petitioner in accordance with the jury's verdict and his plea, the state trial court found that Petitioner qualified as a "habitual felony offender" and imposed a total sentence of thirty (30) years in the custody of the Florida Department of Corrections.  *See* Judgment and Sentencing Orders [ECF No. 9-1] at 70–84.

Petitioner appealed his sentences and conviction to Florida's Second District Court of Appeal ("Second DCA").  Petitioner only advanced one argument on appeal: the state trial court erred in failing to dismiss Counts 6, 7, and 8 on the basis that "section 893.13, [Florida Statutes,]

---

[1] The Second Amended Information originally listed these counts in a different order, *see generally* Second Amended Information [ECF No. 9-1] at 32–34, but the order was changed after the state trial court severed the felon-in-possession counts from the remaining counts, *see* Third Amended Information [ECF No. 9-1] at 56–58; Judgment [ECF No. 9-1] at 70.  For the sake of simplicity, the Court will refer to Petitioner's counts in a way that is consistent with his criminal judgment.

was unconstitutional on its face." Direct Appeal Initial Brief [ECF No. 9-1] at 102. The Second

DCA affirmed the trial court on July 12, 2013, in an unwritten *per curiam* decision. *See Perri v.*

*State*, 143 So. 3d 930 (Fla. 2d DCA 2013).

On January 1, 2014,[2] Petitioner filed a petition for writ of habeas corpus alleging

ineffective assistance of appellate counsel with the Second DCA. *See* State Petition for Writ of

Habeas Corpus [ECF No. 9-1] at 120–41 (citing Fla. R. App. P. 9.141(c)). Petitioner raised the

following four claims: (1) appellate counsel was ineffective "for failing to raise on direct appeal

fundamental error in regards to the jury instruction for fleeing to elude (high speed)," *id.* at 126;

(2) appellate counsel was ineffective for failing to argue on appeal that the trial court erred "in

denying Petitioner['s] Motion for Judgment of Acquittal where the State failed to prove an element

to the crime of fleeing to elude high speed," *id.* at 130; (3) appellate counsel was ineffective for

failing to argue on appeal that his "dual convictions and sentences for possession of a firearm and

possession of ammunition both by a convicted felon violated the prohibition against double

jeopardy," *id.* at 135; and (4) appellate counsel was ineffective for failing to present "a claim of

ineffective assistance of trial counsel" based on trial counsel's failure to advise Petitioner about

the double jeopardy issue, *id.* at 137–38.

On January 14, 2015, the Second DCA issued a written opinion agreeing that appellate

counsel was ineffective for failing to argue that Counts 9 and 10 violated double jeopardy—it

denied Petitioner's other three claims. *See Perri v. State*, 154 So. 3d 1204, 1205 (Fla. 2d DCA

2015) ("Accordingly, we deny grounds one, two, and four of Mr. Perri's petition, but we grant the

petition as it relates to ground three. . . . [W]e remand with directions for the trial court to vacate

---

[2] "Under the 'prison mailbox rule,' a pro se prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009). "Absent evidence to the contrary, [courts] assume that a prisoner delivered a filing to prison authorities on the date that he signed it." *Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014).

Mr. Perri's conviction and sentence for possession of ammunition by a convicted felon."). The state trial court vacated Count 9 upon remand from the Second DCA; his overall sentence remained unchanged. *See* Order Vacating Count 9 [ECF No. 9-1] at 240.

On May 28, 2015, Petitioner filed a motion for postconviction relief pursuant to Fla. R. Crim. P. 3.850. *See* Postconviction Motion ("Postconviction Mot.") [ECF No. 9-1] at 242–57; Memorandum of Law in Support of Postconviction Motion ("Mem. of Law") [ECF No. 9-2] at 3–51. The Postconviction Motion raised the following fifteen grounds for relief: (1) counsel was ineffective "for failing to notify the Defendant that the charges of Possession of Firearm and Ammunition by a convicted felon was subject to [habitual felony offender] enhancements," Postconviction Mot. at 247; (2) counsel was ineffective "for failing to file a motion in limine to exclude statements concerning the Defendant allegedly running into a police cruiser," *id.*; (3) counsel was ineffective "for failing to obtain and show Defendant [the] whole video from Officer Haralson . . . and [the] whole video from Officer Danley," *id.* at 248; (4) counsel was ineffective for failing to properly advise Petitioner to "accept a (10) year prison sentence" offer from the State, *id*; (5) counsel was ineffective for "advising Defendant to not accept a (10) year straight up plea" and instead enter an open plea, *id.* at 249; (6) Petitioner's decision to enter a *nolo contendere* plea on Counts 9 and 10 was involuntary since "the Court and defense counsel failed to advise him that he could not receive a (60) year sentence as a Habitual Felony Offender," *id.* at 249–50; (7) counsel was ineffective "for failing to make a 'still frame' of the video that [an] officer testified [that] a bag was thrown out of the window of defendant['s] vehicle," *id.* at 250; (8) counsel was ineffective for failing to file a motion to suppress the contents of a "bag" where "video footage reflects the bag was not where the police alleged they found it," *id.*; (9) counsel was ineffective "for failing to move to dismiss count (4) Fleeing to Elude (High Speed)," *id.* at 251; (10) counsel was ineffective

"for failing to impeach [S]ergeant Markham, Officer Haralson and Officer Bueford . . . where each testified that Mr. Markham got out of [his] vehicle and ordered defendant to stop when video shows such [sic] never happened," *id.*; (11) counsel was ineffective "for failing to call witness, Lt. Kenny Johnson," *id.* at 252; (12) counsel was ineffective for failing to object "to the Jury Instruction for Fleeing to Elude (High Speed)," *id.* at 253; (13) counsel was ineffective for advising Petitioner to enter an open plea on Counts 9 and 10 even though the "dual convictions violate[d] double jeopardy principles," *id.*; (14) counsel was ineffective for failing to argue that "Florida Statute § 316.1935(3)(a) is unconstitutionally vague" since it does not properly define what "high speed" is, *id.* at 254; and (15) cumulative error, *id.*

On July 16, 2019, the state postconviction court entered a comprehensive written order denying in part Petitioner's Postconviction Motion and setting an evidentiary hearing on the remaining claims. *See* Order Denying in Part Postconviction Motion [ECF No. 9-2] at 135–140. In short, the state court denied Grounds One, Two, Three, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen, but set an evidentiary hearing to properly adjudicate Grounds Four and Five. *See id.* at 139–40. The evidentiary hearing was held on February 21, 2020, where only two witnesses were called: Petitioner and his former trial counsel, Robert Gray. *See generally* Evidentiary Hr'g Tr. [ECF No. 10-11] at 1–96. On March 6, 2020, the state postconviction court entered another order denying Grounds Four and Five of the Postconviction Motion. *See* Order Denying Postconviction Motion [ECF No. 9-2] at 214–17.

Petitioner appealed the state postconviction court's denial of the Postconviction Motion to the Second DCA. On appeal, Petitioner argued that "[t]he Lower Court abused [its] discretion and erred by denying Claims Four and Five of [the Postconviction Motion]," but did not address the denial of the other thirteen claims raised in the Postconviction Motion. *See* Postconviction Appeal

Initial Brief [ECF No. 9-2] at 238.  On August 20, 2021, the Second DCA affirmed the state postconviction court in an unwritten *per curiam* opinion.  *See Perri v. State*, 328 So. 3d 300 (Fla. 2d DCA 2021).  The appellate court's mandate issued on December 3, 2021.  *See* Mandate [ECF No. 9-2] at 286.  On March 7, 2022, Petitioner filed the instant Petition which raises the same fifteen claims originally advanced in the Postconviction Motion.[3]  *See generally* Pet.

## STANDARD OF REVIEW

### A.  Review Under 28 U.S.C. § 2254

"As amended by [the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA")], 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).  Some of the more restrictive limits are found in § 2254(d).  Under that provision, a federal court may grant habeas relief from a state court judgment only if the state court's decision on the merits was (1) contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).  Consequently, § 2254(d) constructs a "highly deferential standard for evaluating state-court rulings" because, after all, this standard "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

"A state court's decision is 'contrary to' federal law if the 'state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court

---

[3] Generally, "a person in custody pursuant to the judgment of a State court" has a one-year period to file a habeas corpus petition.  28 U.S.C. § 2244(d)(1).  Based on these facts, Respondent calculates that "Perri used 56-days of the AEDPA period" and the Petition "appears timely."  Resp. at 9 & n.2.  The Court agrees with Respondent's calculation and finds the Petition is timely under § 2254(d).  *See Day v. McDonough*, 547 U.S. 198, 209–10 (2006) ("[A] district court is not required to doublecheck the State's math [for timeliness purposes].").

decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'"  *Consalvo v. Sec'y, Fla. Dep't of Corr.*, 664 F.3d 842, 844 (11th Cir. 2011) (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)) (brackets omitted).  A state court's decision qualifies as "an unreasonable application of federal law if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* (quoting *Williams*, 529 U.S. at 413) (cleaned up). "'If this standard [seems] difficult to meet'—and it is—'that is because it was meant to be.'"  *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)).

By its own plain terms, § 2254(d)'s deferential standard applies only when a claim "was adjudicated on the merits in State court proceedings[.]"  28 U.S.C. § 2254(d); *see also Cullen*, 563 U.S. at 181 ("If an application includes a claim that has been adjudicated on the merits in State court proceedings, § 2254(d), an additional restriction applies."); *Cone v. Bell*, 556 U.S. 449, 472 (2009) ("Because the Tennessee courts did not reach the merits of Cone's *Brady* claim, federal habeas review is not subject to the deferential standard that applies under AEDPA.").  The summary denial of a claim with no articulated reasons presumptively serves as an adjudication on the merits subjecting the claim to § 2254(d)'s additional restrictions.  *See Richter*, 562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").  This is because federal courts ordinarily presume § 2254(d)'s deferential standard applies when a constitutional claim has been presented to a state court and denied in that forum.  *See, e.g.*, *id.* at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

At the same time, "federal court[s] should 'look through' [an] unexplained decision to the last related state-court decision that *does* provide a relevant rationale" if one exists. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (emphasis added). From there, federal courts "presume that the unexplained decision adopted the same reasoning." *Id.* "[T]he State may rebut [that] presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

In addition to the standard of review imposed by AEDPA, the petitioner must also show that any constitutional error had a "substantial and injurious effect or influence" on the verdict to be entitled to habeas relief. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). The Supreme Court has explained that, while the passage of AEDPA "announced certain new conditions to [habeas] relief," it did not supersede or replace the harmless error standard announced in *Brecht*. *Brown v. Davenport*, 142 S. Ct. 1510, 1524 (2022). In other words, a habeas petitioner must <u>also</u> satisfy *Brecht*, even if AEDPA applies. *See id.* ("[A] federal court must *deny* relief to a state habeas petitioner who fails to satisfy either [*Brecht*] or AEDPA. But to *grant* relief, a court must find that the petition has cleared both tests.") (emphasis in original); *see also Mansfield v. Sec'y, Dep't of Corr.*, 679 F.3d 1301, 1307 (11th Cir. 2012) ("[A] habeas petition cannot be successful unless it satisfies both [AEDPA] and *Brecht*.").

### B. *Ineffective Assistance of Counsel Claims*

The Sixth Amendment affords a criminal defendant the right to "the Assistance of Counsel for his defen[s]e." U.S. Const. amend. VI. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*

*v. Washington*, 466 U.S. 668, 686 (1984).  To prevail on a claim of ineffective assistance of counsel, a habeas litigant must demonstrate "that (1) his counsel's performance was deficient and 'fell below an objective standard of reasonableness,' and (2) the deficient performance prejudiced his defense."  *Raleigh v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 938, 957 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 687–88).

Regarding the deficiency prong, "a petitioner must establish that no competent counsel would have taken the action that his counsel did take" during the proceedings.  *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).  If "some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial[,]" counsel did not perform deficiently.  *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (quoting *White v. Singletary*, 972 F.2d 1218, 1220 (11th Cir. 1992)).

As for the second prong, "a defendant is prejudiced by his counsel's deficient performance if 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Porter v. McCollum*, 558 U.S. 30, 40 (2009) (quoting *Strickland*, 466 U.S. at 694).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.

## **EXHAUSTION**

Pursuant to 28 U.S.C. § 2254(b)–(c), habeas petitioners must exhaust their claims before presenting them in a federal habeas petition.  *See Johnson v. Florida*, 32 F.4th 1092, 1096 (11th Cir. 2022) ("Plainly, the purpose of the exhaustion requirement is to afford the state court 'the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.'") (quoting *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)).  This requirement is met if a petitioner "fairly present[ed] every issue raised in [their] federal petition to the state's highest court, either on direct

appeal or on collateral review." *See Mason v. Allen*, 605 F.3d 1114, 1119 (11th Cir. 2010) (cleaned up). "If a petitioner fails to 'properly' present [their] claim to the state court—by exhausting [their] claims and complying with the applicable state procedure—prior to bringing [their] federal habeas claim, then [§ 2254] typically bars [courts] from reviewing the claim." *Id.* In other words, where a petitioner has not "*properly* presented his claims to the state courts," the petitioner will have "procedurally defaulted his claims" in federal court. *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).

The respondent has the option to waive an exhaustion defense. *See* 28 U.S.C. § 2254(b)(3) ("A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement."); *Vazquez v. Sec'y, Fla. Dep't of Corr.*, 827 F.3d 964, 966 (11th Cir. 2016) ("States can waive procedural bar defenses in federal habeas proceedings, including exhaustion.") (cleaned up). Respondent concedes "Grounds Four and Five are exhausted[,]" so the Court will review each of these two claims on their merits. Resp. at 9.

Conversely, Respondent contends all the remaining claims are unexhausted and have been procedurally defaulted for the same reason: Petitioner "failed to raise the other thirteen claims on appeal [before the Second DCA]." *Id.* at 9–10. The Court agrees with Respondent's assessment, and finds that Grounds One, Two, Three, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen must be dismissed as procedurally defaulted.

### A. *Petitioner Failed to Exhaust the Claims*

Federal courts have recognized for over a century that "a state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citing *Ex Parte Royall*, 117 U.S. 241, 253

(1886)).  "Exhaustion has two essential requirements," and the petitioner must meet both in order to have his claims reviewed on the merits.  *Johnson*, 32 F.4th at 1096.  To start, "a federal claim must be 'fairly presented' to the state court."  *Brown v. Dixon*, No. 19-60704-CIV, 2022 WL 1197657, at *4 (S.D. Fla. Mar. 15, 2022) (citing *Picard*, 404 U.S. at 275).  To do so, the habeas petitioner must ensure the federal claim he advances in his habeas petition is substantially the same as the federal claim he or she previously raised before the state courts.  *See McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) ("[I]n order to ensure that state courts have the first opportunity to hear all claims, federal courts have required a state prisoner to present the state courts with the same claim he urges upon the federal courts. . . . [W]e [require] that a petitioner presented his claims to the state court such that a reasonable reader would understand each claim's particular legal basis and specific factual foundation.") (cleaned up).  Respondent does not contest this first requirement, nor could it credibly do so.  All fifteen claims in the Petition are identical to the fifteen claims raised by Petitioner in his Postconviction Motion.  *Compare* Pet. at 6–14, *with* Postconviction Mot. at 247–54; *see also Kelley v. Sec'y for Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004) ("Federal habeas petitioners are undoubtedly on their strongest footing with regard to the exhaustion requirement when their federal claims are carbon copies of the claims they presented to the state courts.").

The second requirement is where Petitioner runs into trouble.  In addition to "fairly presenting" a federal claim to the state court, a habeas petitioner must also "take his claim 'to the state's highest court, either on direct appeal or on collateral review.'"  *Johnson*, 32 F.4th at 1096 (quoting *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010)).  Put another way, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.

As Respondent explains, Petitioner only appealed the denial of two out of the fifteen grounds raised in the Postconviction Motion. *See* Response at 10 ("In his appellate brief, Perri addressed only two of the fifteen postconviction claims."); *see also* Postconviction Appeal Initial Brief [ECF No. 9-2] at 238 ("The Lower Court abused [its] discretion and erred by denying Claims Four and Five of [the Postconviction Motion.]").  In Florida, a claim that is raised for the first time in a Rule 3.850 motion is only exhausted if the petitioner appeals the denial of that motion. *See Nieves v. Sec'y, Fla. Dep't of Corr.*, 770 F. App'x 520, 521 (11th Cir. 2019) ("In Florida, exhaustion usually requires not only the filing of a [Rule] 3.850 motion, but an appeal from its denial.") (quoting *Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979)).  By failing to appeal the denial of thirteen of the fifteen claims in the Postconviction Motion, Petitioner has failed to exhaust those same claims for purposes of habeas review. *See LeCroy v. Sec'y, Fla. Dep't of Corr.*, 421 F.3d 1237, 1260–61 (11th Cir. 2005) ("We also conclude that the defendant failed to properly exhaust this issue when he failed to raise it . . . in his appeal of the State 3.850 Court's decision."); *Matthews v. McNeil*, No. 4:07cv356, 2008 WL 4925643, at *4 (N.D. Fla. Nov. 14, 2008) ("A failure to appeal a specific issue after denial by the Rule 3.850 trial court is a procedural default.").

## B. The Procedural Default Cannot be Excused

There are certain scenarios where a habeas petitioner can revive an unexhausted claim.  For example, when a habeas petition contains both exhausted and unexhausted claims (otherwise referred to as a "mixed petition"), federal district courts are generally required to either stay the case so the petitioner can "exhaust his claims" in state court or give the petitioner an opportunity to amend "the habeas petition to present only exhausted claims to the district court." *King v. Chase*, 384 F. App'x 972, 974 (11th Cir. 2010) (quoting *Rose v. Lundy*, 455 U.S. 509, 518–19 (1982)).  However, the court is not required to extend this courtesy "when it is obvious that the

unexhausted claims would be procedurally barred in state court due to a state-law procedural default[.]" *Snowden v. Singletary*, 135 F.3d 732, 736–37 (11th Cir. 1998).   In addition, the Supreme Court has also recognized two equitable exceptions whereby a habeas petition can excuse his or her procedural default: "cause and prejudice" and "actual innocence." *See Dretke v. Haley*, 541 U.S. 386, 393 (2004) ("[A] federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default.  We have recognized a narrow exception to the general rule when the habeas applicant can demonstrate that the alleged constitutional error has resulted in the conviction of one who is actually innocent of the underlying offense.").  Unfortunately for Petitioner, none of these exceptions can save his unexhausted claims.

*First*, the "mixed petition" exception does not apply because Petitioner can no longer exhaust his claims in state court.  "[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, [the court] can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief."  *Snowden*, 135 F.3d at 736.  As the Court just recounted, thirteen of the fifteen claims in the Petition were raised in the Postconviction Motion but were not raised again on appeal in front of the Second DCA.  *See* Postconviction Appeal Initial Brief [ECF No. 9-2] at 238.  Florida law does not allow a party to file a successive appeal, so any claim that was not presented during Petitioner's appeal of the Postconviction Motion is considered abandoned and can no longer be raised in any state forum.  *See Walton v. State*, 58 So. 3d 887, 888 (Fla. 2d DCA 2011) ("But we believe a pro se postconviction claimant can, by failing to raise such issues in his brief, waive [his] claim."); *cf. Thompson v. Jones*, No. 15-23614-CIV, 2017 WL 11461015, at *10 (S.D. Fla. Mar. 29, 2017) ("Here, petitioner did not timely appeal the summary denial of his claims.

Therefore, he waived and/or otherwise abandoned those claims.  Since they were not properly exhausted in the state forum they are procedurally defaulted from review here."), *report and recommendation adopted*, 2017 WL 11460995 (S.D. Fla. Dec. 7, 2017).  Petitioner can no longer exhaust his claims in state court, so the Court must dismiss the unexhausted claims as procedurally defaulted unless one of the equitable exceptions applies.

     *Second*, Petitioner cannot rely on either the "cause and prejudice" or "actual innocence" exception since he has not affirmatively alleged that he is entitled to either one.  To demonstrate "cause and prejudice," the petitioner must show that "some objective factor external to the defense impeded the effort to raise the claim properly in the state court[,]" and that, had the claim been properly raised, "there is at least a reasonable probability that the result of the proceeding would have been different." *Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 688 (11th Cir. 2017).  Conversely, the actual innocence exception can only be met when the petitioner provides new evidence showing "it is more likely than not that no reasonable juror would have convicted the petitioner." *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 329 (1995)).  Petitioner has failed to allege that "some objective factor external to the defense" prevented him from raising the thirteen unexhausted claims before the Second DCA, nor has he provided new evidence showing that he is actually innocent.  *See generally* Pet.  Accordingly, because Petitioner has failed to show that the procedural default should be excused, the Court must **DISMISS** Grounds One, Two, Three, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen as procedurally defaulted.  *See Gordon v. Nagle*, 2 F.3d 385, 388 (11th Cir. 1993) ("A defendant has the burden of establishing cause and prejudice."); *Arthur v. Allen*, 452 F.3d 1234, 1245 (11th Cir. 2006) ("The petitioner must support the actual innocence claim with new reliable evidence[.]") (cleaned up).

## ANALYSIS

Of the fifteen claims raised in the Petition, only two—Grounds Four and Five—are reviewable on their merits.  In applying the standard of review set forth in § 2254(d), the Court must review the reasonableness of "the last state court to decide a prisoner's federal claim . . . on the merits in a reasoned opinion." *Wilson*, 138 S. Ct. at 1192.  In this instance, the merits of Grounds Four and Five were raised before the Second DCA, but the state appellate court merely affirmed the lower court in an unreasoned opinion. *See Perri*, 328 So. 3d at 300.  In these circumstances, the Supreme Court has instructed district courts to "'look-through' [an] unexplained decision to the last related state-court decision that does provide a relevant rationale." *Wilson*, 138 S. Ct. at 1192.  Here, the state postconviction court denied Grounds Four and Five in a detailed written order after holding an evidentiary hearing; thus, the Court will review the reasonableness of this order. *See* Order Denying Postconviction Motion [ECF No. 9-2] at 214–17; Evidentiary Hr'g Tr. [ECF No. 10-11] at 1–96.

On the surface, Grounds Four and Five are extremely similar, as both involve counsel's purported failure to properly advise Petitioner about favorable plea offers conveyed by the State. In Ground Four, Petitioner alleges the State offered him a ten (10) year plea deal to resolve all counts, but defense counsel advised him not to accept the deal "as the case looked good and he would receive a more favorable ruling at trial[.]"  Pet. at 7.  In the Memorandum of Law filed in the state postconviction court, Petitioner clarifies he expected Deputy Dan Payne and Lieutenant Kenny Johnson to be called as witnesses at his trial and that, had counsel "properly advised that these two witnesses would not be called at trial," he would have instead chosen to accept the plea deal.  Memo. of Law [ECF No. 9-2] at 15.  Petitioner alleges in Ground Five that trial counsel rendered misadvice about the same plea offer by advising Petitioner "to plea to the Court" even

though it resulted in a much longer thirty (30) year sentence.  Pet. at 8; *see also* Postconviction Appeal Initial Brief [ECF No. 9-2] at 229 ("Appellant's trial counsel was ineffective for advising Appellant to reject the plea offer and after advising Appellant to plead straight up to the Lower Court on Counts 9 and 10 where Appellant would most likely receive a much higher sentence than the ten years offered by the State.") (parenthetical omitted).

The contours of Grounds Four and Five greatly overlap and it is somewhat difficult to differentiate these two claims from one another.  Nevertheless, the Court interprets the Petition as alleging that defense counsel made two material misrepresentations to Petitioner when discussing the State's plea offer: (1) Petitioner would be successful at trial because he was calling Deputy Payne and Lieutenant Johnson as witnesses (Ground Four), and (2) Petitioner was not at risk for being sentenced as a habitual felony offender on the felon-in-possession counts if he did not accept the State's offer (Ground Five).  *See* Pet. at 7–8.  Petitioner is not entitled to relief on either ground.

### A.  *The State Court's Postconviction Order*

As part of the Sixth Amendment's guarantee that criminal defendants receive effective counsel, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."  *Missouri v. Frye*, 566 U.S. 134, 145 (2012).  Implicit in this duty is that counsel will provide competent advice to his or her client about the pros and cons of either accepting or rejecting a plea offer tendered by the prosecution.  *See Lafler v. Cooper*, 566 U.S. 156, 162 (2012) ("During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'") (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)).

The Court applies the same two-part *Strickland* test to assess the competence of defense counsel during plea negotiations.  First, the defendant must show that counsel's advice to either

accept or reject a plea offer was objectively unreasonable.  *See id.* at 163 ("The performance prong of *Strickland* requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'") (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)).  Next, to establish prejudice, "a defendant must show a reasonable probability that but for counsel's ineffectiveness: (1) 'the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)'; (2) 'the court would have accepted its terms'; and (3) 'the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.'"  *Osley v. United States*, 751 F.3d 1214, 1222 (11th Cir. 2014) (quoting *Lafler*, 566 U.S. at 164).

The state postconviction court's order denying Grounds Four and Five is the dispositive order this Court must review.  To begin, the state court made a threshold finding that Mr. Gray's testimony was "highly credible," whereas Petitioner's testimony was "inconsistent and not credible."  Order Denying Postconviction Motion [ECF No. 9-2] at 214.  In denying Ground Four, the state postconviction court found that Mr. Gray recognized that discrediting Deputy Payne was essential to Petitioner's case, especially to acquit Petitioner of Count 2—aggravated assault on a law enforcement officer.  *See id.* at 215 ("Specifically, Mr. Gray wanted to establish that Deputy Payne, and not Defendant, was responsible for the crash.").  Ultimately, the state court found that Mr. Gray had reasonably declined to call Deputy Payne and Lieutenant Johnson at trial because Mr. Gray was successful in proffering other evidence showing that Deputy Payne had been untruthful.  *See id.* ("Mr. Gray was able to admit Deputy Payne's video through another witness, as well as evidence that Deputy Payne was untruthful in his report.").  The postconviction court also found that Mr. Gray advised Petitioner that "he still believed it was best for Defendant to enter

the plea," and that it was Petitioner who was hesitant to accept the plea since it required him to admit guilt on the aggravated assault charge. *See id.* at 216 ("Mr. Gray testified the charge of Aggravated Assault on a Law Enforcement Office was a 'hangup' for Defendant because he was adamant that his time in prison would be adversely affected if he were convicted of that charge.").

In denying Ground Five, the state postconviction court again credited much of Mr. Gray's testimony. It found that Mr. Gray had strongly encouraged Petitioner to take the State's plea offer to <u>avoid</u> being sentenced as a habitual felony offender. *See id.* ("Mr. Gray testified that the plea offers made by the State were non-habitual offender sentences, therefore he advised Defendant to accept the plea offer because if he were found guilty, he was facing Habitual Felony Offender sentencing."). Mr. Gray denied ever telling Petitioner that "the case looked good" or that he would "receive a more favorable ruling if he took it to trial." *Id.* Once Petitioner's trial concluded, Mr. Gray advised Petitioner to enter an open plea on the felon-in-possession counts since the State had already indicated they would seek a habitual felony offender sentence and he "was hopeful that the court would run the sentences concurrent." *Id.* at 217. Since the trial court ultimately ordered that the felon-in-possession sentence would run "concurrently with the 30 year Habitual Felony Offender sentence on the Fleeing to Elude charge that the jury found [Petitioner] guilty of[,]" the state postconviction court concluded Petitioner did not suffer any prejudice from entering an open plea on the felon-in-possession counts. *Id.*

Having reviewed the state postconviction court's order denying Grounds Four and Five, as well as the transcript of the evidentiary hearing, the Court concludes the state courts reasonably applied "clearly established Federal law" and did not make an "unreasonable determination of the facts in light of the evidence presented[.]" 28 U.S.C. § 2254(d)(1)–(2). Before explaining why, the Court must address the state postconviction court's decision to find Mr. Gray credible and

Petitioner not credible. *See* Order Denying Postconviction Motion [ECF No. 9-2] at 214. Under AEDPA, a federal court must <u>presume</u> a state court's "determination of a factual issue" is correct—this presumption can only be overcome if the petitioner provides his or her own "clear and convincing evidence" that the state court's factual findings were wrong. 28 U.S.C. § 2254(e)(1). "In the absence of clear and convincing evidence, we have no power on federal habeas review to revisit the state court's credibility determinations." *Bishop v. Warden, GDCP*, 726 F.3d 1243, 1259 (11th Cir. 2013); *see also Consalvo*, 664 F.3d at 845 ("Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review. Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'") (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Even if the petitioner meets this burden, § 2254(d) would still oblige the district court to confirm that "the state court's factual error (or errors) resulted in a 'decision' that was 'based on' an 'unreasonable determination of the facts.'" *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1224 (11th Cir. 2021) (Newsom, J., concurring); *see also Pye v. Warden, Ga. Diagnostic Prison*, No. 18-12147, 2022 WL 4866336, at *5 (11th Cir. Oct. 4, 2022) (en banc) (adopting Judge Newsom's concurrence in *Hayes*).

Petitioner provides <u>no evidence</u>, let alone clear and convincing evidence, that the state court's decision to find Mr. Gray credible (and him incredible) was wrong. *See generally* Pet. Instead, Petitioner merely repeats the same allegations the state postconviction court already found were not credible, *see id.* at 7–8, which suggests to the Court that Petitioner's request for an evidentiary hearing is for the express purpose of reweighing his credibility and the credibility of Mr. Gray. That is not what an evidentiary hearing is for. As the Supreme Court recently reiterated, an evidentiary hearing can be granted under § 2254 "in only two scenarios": (1) when a claim

relies on "a 'new' and 'previously unavailable' 'rule of constitutional law' made retroactively applicable by this Court," or (2) when there is "'a factual predicate that could not have been previously discovered through the exercise of due diligence.'" *Shinn v. Ramirez*, 142 S. Ct. 1718, 1734 (2022) (quoting 28 U.S.C. § 2254(e)(2)). The credibility of Petitioner and Mr. Gray does not implicate either of these exceptions; thus, the Court cannot hold an evidentiary hearing to reweigh their credibility. *Cf. Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1297–98 (11th Cir. 2015) (holding the state court's "[credibility] determination was not unreasonable" even though the state court <u>and</u> the district court failed to hold an evidentiary hearing). Instead, if Petitioner wanted this Court to reconsider his credibility, he had the burden to provide evidence that the state postconviction court's credibility findings were erroneous. *See* 28 U.S.C. § 2254(e)(1). Petitioner has failed to do so, and now—just as the state postconviction court did—this Court will presume that Mr. Gray's testimony was credible and Petitioner's testimony was not credible.

### B. *Ground Four*

As to Ground Four, the testimony at the hearing established that Mr. Gray <u>never</u> specifically told Petitioner he would call Deputy Payne and Lieutenant Johnson to testify and that, on the contrary, Mr. Gray strongly advised Petitioner to accept the State's plea offer. Both Petitioner and Mr. Gray explained that discrediting Deputy Payne was an essential part of Petitioner's defense. *See* Evidentiary Hr'g Tr. at 12 ("[Petitioner:] There was a—there was an allegation that I rammed Payne's vehicle. The Sheriff's Department, when they look at the video themself [sic]—I guess if there's an accident they do their own investigation—it shows that Payne rammed my vehicle."); *id.* at 59 ("[Mr. Gray:] "[W]e again wanted to show that law enforcement was capable of not telling the truth with regard to incidents that took place during [Petitioner's] arrest."). However, Mr. Gray concluded he did not need to call Deputy Payne or Lieutenant

Johnson to accomplish this goal.  *See id.* at 60 ("We did get video in regarding the crash involving

Mr. Perri and we also did elicit testimony that indicated that Deputy Payne's initial report of how

that incident occurred was not accurate and not truthful."); *see also id.* at 62 ("And once we had

the video, I had no further need of [Deputy Payne].").[4]  And Mr. Gray categorically denied ever

telling Petitioner he was going to call Deputy Payne and Lieutenant Johnson at trial.  *See id.* at 62

("[A:] I never made any promises to Mr. Perri that I would call Deputy Payne. . . . Q: Did you

make any promises to call Kenny Johnson to testify?  A: None whatsoever[.]").

So why did Petitioner reject the State's plea agreement?  According to Mr. Gray, Petitioner

was deeply concerned about Count 2 of the Information, which charged Petitioner with aggravated

assault on a law enforcement officer with a deadly weapon.  *See* Third Amended Information [ECF

No. 9-1] at 56.  Mr. Gray explained he "felt that the risks to Mr. Perri, especially considering a

large portion of the incident was contained on videotape, outweighed the risk of going to trial and

that he would suffer a greater sentence than the 10-year offer which was, as I recall, non-habitual

offender if we went to trial and lost."  *Id.* at 69.  Despite this advice, Petitioner refused to accept

any plea agreement which required him to plead guilty to Count 2.  *See id.* at 70 ("Mr. Perri was

very concerned and very hung up on I believe it was Count 2. . . . Mr. Perri was very concerned

---

[4]  The state court reasonably concluded Mr. Gray's decision not to call Deputy Payne and Lieutenant Johnson was not deficient performance.  The decision to call (or not call) specific witnesses "is the epitome of a strategic decision, and is one that we will seldom, if ever, second guess."  *Waters v. Thomas*, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc).  Mr. Gray convincingly explained he did not call Deputy Payne because he "would have been in a position to testify regarding events that took place once Mr. Perri exited his vehicle and fled on foot[,]" and his overall testimony would have been redundant.  Evidentiary Hr'g Tr. at 62.  In addition, Mr. Gray did not call Lieutenant Johnson since he determined his testimony "would necessarily have been hearsay[.]"  *Id.* at 63.  These were patently reasonable decisions any other competent attorney would have made—indeed, Mr. Gray was vindicated since Petitioner was acquitted of Count 2 despite never calling Deputy Payne or Lieutenant Johnson at trial.  *See* Verdict [ECF No. 9-1] at 66.  Suffice to say, the state court correctly applied *Strickland* in finding that this decision was reasonable.  *See Strickland*, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.").

that if he were convicted of that particular count it might adversely affect his time in State Prison.").

Despite Mr. Gray's best efforts, "[t]he State refused to drop that count. Any plea negotiations had to include a plea to the charge of aggravated assault upon a law enforcement officer." *Id.* During the trial itself, Mr. Gray reiterated to Petitioner that he "still felt, especially with the way the trial was going, that Mr. Perri would be better served by accepting a plea negotiation rather than risking habitual offender sentencing if he were found guilty on those charges." *Id.* at 72.[5] Petitioner's fear of being convicted of Count 2 is also corroborated by his own testimony since he admits that he only wanted Deputy Payne to testify since it absolved him of Count 2. *See id.* at 40 ("Q: Now, the only charge that directly involved Dan Payne was the aggravated battery and that one was dropped, correct? A: Correct."). Based on the testimony of Mr. Gray, which the state postconviction court credited, it is clear that defense counsel repeatedly advised Petitioner to accept the State's plea offer and he never told Petitioner he would specifically call Deputy Payne and Lieutenant Johnson as witnesses. Ground Four of the Petition is therefore **DENIED**.

---

[5] During the trial, the State revealed "there were additional videos that were in the custody of [the] Sebring Police Department that had not been provided to either the State or the Defendant[.]" Evidentiary Hr'g Tr. at 65. Upon learning about the existence of these videos, Petitioner stated in open court that he was considering accepting the State's plea deal. *See* Trial Tr. [ECF No. 10-6] at 37 ("Today this just hit me, you know. And I understand—I don't really understand everything, but I think it's in my best interest now to take a plea[.]"). During the evidentiary hearing, Petitioner alleged this statement was proof that he wanted to accept the State's plea offer, but Mr. Gray's misadvice induced him to reject it instead. *See* Evidentiary Hr'g Tr. at 20 ("In court it's on the record where I'm telling the Judge at the time—I'm telling the Judge that if I had seen this new evidence . . . I would have took a plea, we wouldn't be here today."). However, this self-serving testimony is refuted by Mr. Gray. First, Mr. Gray acknowledged that, although Petitioner made this statement in open court, he still refused to accept the plea deal because it required him to plead guilty to Count 2. *See id.* at 74 ("He decided not to, which was somewhat of a surprise because prior to our conversation regarding the plea offer during trial he had made statement in open court that indicated he was more inclined to accept the plea offer. So I though that perhaps he was going to accept it. . . . But, for whatever reason, he rejected the plea offer and wanted to continue with the trial."). Second, Mr. Gray reiterated that, regardless of whether he was successful in suppressing these new videos, he still believed Petitioner "would be better served by accepting a plea negotiation[.]" *Id.* at 72.

### C. Ground Five

As to Ground Five, the Court again concludes the state postconviction court reasonably found that defense counsel did not render misadvice about Petitioner being sentenced as a habitual felony offender. Once again, the state court fairly concluded that Mr. Gray's testimony refutes Petitioner's allegations. As discussed above, Mr. Gray advised Petitioner to accept the State's plea, in part to avoid being sentenced as a habitual felony offender. *See id.* at 69, 72; *see also id.* at 78 ("I never advised Mr. Perri to reject the plea offer. As I stated from the beginning, I felt that it was in his best interest to accept the plea offer."). Moreover, Mr. Gray's post-trial advice that Petitioner should enter an open plea on the remaining felon-in-possession counts did not prejudice Petitioner. Mr. Gray advised Petitioner to plea "in the hope that Mr. Perri would not receive any more sanctions than he would have received had he taken the case to trial and been found guilty the first time around." *Id.* at 77; *see also id.* at 81 ("I told him that there was the possibility of consecutive time or habitual offender time if we did go to trial [on the felon-in-possession counts] and he was found guilty.").

Although the state trial court sentenced Petitioner to thirty (30) years as a habitual felony offender on the felon-in-possession counts,[6] *see* Sentencing Orders [ECF No. 9-1] at 80–83, these sentences ran concurrently with the thirty (30) year habitual felony offender sentence Petitioner received on Count 4, *see id.* at 74–75. This proved Mr. Gray right, as he predicted that the trial court would impose concurrent sentences if Petitioner entered an open plea. *See* Evidentiary Hr'g Tr. at 77 ("That, in fact, did work that way. Mr. Perri did receive 30 years on the firearm charge. However, that was run concurrently with the fleeing to [elude] charge that the jury found him guilty with."). Ultimately, even if counsel rendered misadvice, the state postconviction court was

---

[6] Recall that one of the two felon-in-possession convictions was later vacated since it violated double jeopardy. *See* Order Vacating Count 9 [ECF No. 9-1] at 240.

correct to conclude that Petitioner failed to show prejudice since entering the open plea did not result in a harsher overall sentence. *See Osley*, 751 F.3d at 1222 ("[To establish prejudice] the conviction or sentence, or both, under the [plea] offer's terms [must be] less severe than under the judgment and sentence that in fact were imposed."); *see also Alcorn v. State*, 121 So. 3d 419, 430 (Fla. 2013) ("[T]o establish prejudice, the defendant must allege and prove a reasonable probability . . . [that] the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."). For the foregoing reasons, Ground Five is **DENIED**.

<u>**EVIDENTIARY HEARING**</u>

No evidentiary hearing is warranted in this matter. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("[I]f the [state court] record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing.").

<u>**CERTIFICATE OF APPEALABILITY**</u>

After careful consideration of the record in this case, the Court declines to issue a certificate of appealability ("COA"). A habeas petitioner has no absolute entitlement to appeal a district court's final order denying his habeas petition. Rather, to pursue an appeal, a petitioner must obtain a COA. *See* 28 U.S.C. § 2253(c)(1); *Harbison v. Bell*, 556 U.S. 180, 183 (2009).

Issuance of a COA is appropriate only if a litigant makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To do so, litigants must show that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). And "[w]here a district court has disposed of claims . . . on procedural grounds, a COA will be granted only if the court concludes that 'jurists of reason' would find it debatable both 'whether the petition states a valid claim of the

denial of a constitutional right' and 'whether the district court was correct in its procedural ruling.'"

*Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001) (quoting *Franklin v. Hightower*, 215 F.3d 1196, 1199 (11th Cir. 2000)).

Here, reasonable jurists would not debate the correctness of either the Court's procedural ruling dismissing the majority of the Petition's claims, or the Court's decision to deny Grounds Four and Five on the merits. Accordingly, a COA must be denied.

<u>**CONCLUSION**</u>

Having carefully reviewed the record and governing law, it is hereby

**ORDERED AND ADJUDGED** that the Petition [ECF No. 1] is **DISMISSED in part** and **DENIED in part**. Grounds One, Two, Three, Six, Seven, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, and Fifteen are all **DISMISSED** as procedurally defaulted. Grounds Four and Five are **DENIED**. Any request for a certificate of appealability is **DENIED**, and an evidentiary hearing is **DENIED**. All deadlines are **TERMINATED**, and any pending motions are **DENIED** as moot. Accordingly, this case is **CLOSED**.

**DONE AND ORDERED** in Fort Lauderdale, Florida, this 5th day of October, 2022.

_____
**RODOLFO A. RUIZ II**
**UNITED STATES DISTRICT JUDGE**

cc:     Counsel of Record

        Sean Perri
        DC # H15037
        DeSoto Annex
        Inmate Mail/Parcels
        13617 SE Highway 70
        Arcadia, FL 34266
        PRO SE